CIPRIAN TURCU, SBN 259628
MUNOZ & MUNOZ ATTORNEYS AT LAW
A PROFESSIONAL LAW CORPORATION
232 EAST FOOTHILL BLVD. SUITE 201
AZUSA CA 91702
PH. (626) 334-8405
FAX. (626) 334-8440

Attorney for Respondents



**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IN RE:

PHILIP MOORE and
BONNIE MOORE

<div style="float:right">

)   **CASE NO.: 6:23-bk-14289-WJ**
)
)
)
)   **OPPOSITION TO DEBTORS' MOTION**
)   **FOR DAMAGES AND ISSUANCE OF AN**
)   **ORDER TO SHOW CAUSE RE:**
)   **CONTEMPT OF THE DISCHARGE**
)   **INJUNCTION; MEMORANDUM OF**
)   **POINTS AND AUTHORITIES;**
)   **DECLARATION OF MICHAEL J.**
)   **MUNOZ**
)
)   **Hearing: January 23, 2025**
)
)
)
)
)
)

</div>

To the Honorable Wayne Johnson, and to Debtor and his Attorney of record:

PLEASE TAKE NOTICE THAT, at the place and time noted in the above caption, Fausto

Atilano (hereinafter, "Creditor") and Michael Munoz, Esq. ("Counsel" and collectively, "Respondents")

will oppose Debtor's Philip Moore's (hereinafter, "Debtor") motion for damages and order for contempt

-1-

1  on the following grounds: as to the motion for damages that (1) the automatic stay expired with the

2  Debtor's discharge on January 2, 2024 and thus, any action or inaction by Debtor or Counsel *after* the

3  expiration of the stay could not constitute a violation thereof (2) Debtor is estopped from claiming

4  damages for Creditor's inaction over a time period during which Debtor's attorney led Creditor to

5  believe that it was okay to wait (3) even assuming, arguendo, that a stay had been in place, Creditor was

6  not required to dismiss his state court lawsuit to avoid sanctions. As to Debtor's motion for contempt of

7  the discharge injunction, Creditor and Counsel oppose on grounds that the injunction did not discharge

8  the debt owed to Creditor for fraud or for violation of fiduciary duty and the state court had concurrent

9  jurisdiction to decide the whether the debt was dischargeable under 11 USC 1334.

10  **Statement of Facts**

11  On or about July 12, 2023 Creditor wrote a check for $95,000 which he gave to Debtor and

12  which Debtor deposited. On September 20, 2023—a bit over two months later—Debtor filed for

13  bankruptcy. Debtor did not schedule any debt owed to Creditor, list Creditor as a creditor, or otherwise

14  give Creditor notice of the filing. The meeting of creditors was scheduled for October 26, 2023.

15  Creditor retained Counsel who, unaware of the bankruptcy, filed suit in state court over the

16  $95,000 debt on 12/08/2023. See Debtor's Motion ("Motion"), Exhibit B, page 2.  The suit was against

17  Debtor, in his personal capacity, and Ocean Corp, a corporate defendant. At the time, Debtor was the

18  CEO and one of the two directors of the corporate defendant.

19  Creditor obtained his Chapter 7 discharge on January 2, 2024. On January 3, 2024 Debtor was

20  served with the summons for the lawsuit. He retained an attorney for that suit. The attorney emailed

21  Counsel a letter of representation dated 1/11/2024 (See Exhibit 1, "Email from Kiki Engel") asking for

22  additional time until February 12, 2024 to file a responsive pleading in the suit. She did not tell—or

23  write—Counsel about the bankruptcy. Counsel agreed to the additional time.

24  On or about February 20, 2024 Mr. Benjamin Heston, Debtor's attorney in the instant case

25  contacted Counsel via telephone, told him about the bankruptcy case and requested that Counsel dismiss

26  -2-

1  Creditor from the state case. This was the first time Counsel had heard of the bankruptcy case, and of

2  Mr. Heston for that matter. See Declaration of Michael J Munoz, at pp. 4. Counsel asked Mr. Heston to

3  send over some documentation supporting the bankruptcy claim.

4      On February 22, 2024 Mr. Heston emailed the discharge order. Counsel, however was out of the

5  office between February 22 and February 28, 2024 and did not read the order until February 28. Id, at

6  pp. 7 Counsel did not conduct any settlement negotiations of Debtor's state law case between February

7  22-28. Id, at pp. 8.

8      On February 28, and before Counsel read the February 22 email, Mr. Heston again emailed

9  Counsel. Mr. Heston wrote that his client wanted to move to have Creditor held in contempt for

10  violation of the stay. Mr. Heston wrote that he strongly advised his client to take the simplest route and

11  allow himself to be dismissed from the lawsuit—i.e., instead of moving for contempt. He asked that

12  Counsel call him and said that he would be free all day. Exhibit 2, Email from B. Heston re: contempt

13  and phone call

14      Counsel then read both the February 28 and February 22 emails.

15      Counsel called Mr. Heston on February 28, as the latter requested. He asked Mr. Heston for a list

16  of creditors in the bankruptcy case, to check whether Creditor had been listed. He also asked for

17  additional time to consult with a bankruptcy attorney before Mr. Heston carried out the contempt threat.

18  Mr. Heston answered that would be fine. He also sent the list and wrote that "the documents [. . .] list

19  the corporation" on page 5 and 50. Creditor's name was not in fact on the list.

20      A week after this exchange, on March 7, 2024, Debtor's attorney filed a notice of stay in the civil

21  suit. (Exhibit 3) The notice was also served, via email, on Counsel. It said "this case is stayed [. . .] with

22  regards to" Debtor. It said it was an "automatic stay caused by filing in another court" and it was made

23  under the declaration of perjury by Debtor's attorney in the civil case.

24      Sometime between March 7, 2024 and March 12, 2024 Debtor filed a mechanic's lien on some—

25  or most—of Creditor's property.

26                                      -3-

1    On March 12, 2024 Mr. Heston emailed counsel, asking when he would be dismissing Debtor

2    from the civil suit. In what is far from a model for clarity, Counsel wrote that he needed to talk to "his

3    [i.e.] Creditor's civil attorney first". Counsel made a mistake writing "civil" attorney, when what he meant

4    was "bankruptcy". Counsel then brought up Debtor's recent lien and wrote that Debtor "should of [sic]

5    hold off on doing that when I'm trying to get him [i.e., Creditor] to agree to dismiss the lawsuit." Counsel

6    then concluded "I will let you know once I talk to his civil attorney". See Exhibit 4, March 12 email

7    exchange.

8    On March 23, 2024 Counsel completed a dismissal form and sent it to Debtor's attorney for the

9    state case. She filed it with that court on March 29.

10    Between March 12 and March 23, Counsel conducted no settlement negotiations of the state

11    court case, and had no communication with either Mr. Heston or the state case lawyer.

12    On June 20, 2024 Creditor, through counsel, moved in the state court to add Debtor back to the

13    lawsuit, for fraud, misrepresentation, and breach of fiduciary duty.

14    On August 28, 2024 the state court denied, without prejudice, the motion to amend.

15    Sometime in October, 2024 , Creditor obtained another attorney and on November 1, 2024

16    Counsel was relieved as the attorney of record attorney in the state case. Other than responding to the

17    instant motion, Counsel has performed no further work on the state case.

18    ## POINTS AND AUTHORITIES

19    **1. The post-discharge failure to dismiss a state court action against the person of the Debtor**

20    **cannot constitute a willful violation of the 11 U.S.C. § 362 automatic stay because that stay**

21    **expires at the time Debtor obtains the discharge.**

22    Nothing lasts forever. The stay provided by 11 U.S.C § 362(a)—the one which Debtor claims

23    entitles him to damages here—ends with the earliest of "(A) the time the case is closed; (B) the time the

24    case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual or a

25

26                                                    -4-

1   case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied." 11 U.S.C.A. §

2   362 (c)(2) (West)

3       Initially, Debtor's moving papers observe that the stay was violated when Creditor and Counsel

4   filed a state court action against Debtor. See Debtor's Motion, at p. 4 lines 16-18. The statute he relies

5   upon does not, however, entitle him to damages for just any violation. Only "willful" violations are

6   worthy of such sanction. See 11 U.S.C 362 (k). Debtor does not, and cannot say, that the filing of the

7   state court action was a willful violation of the stay. That is so because, as the Debtor writes, a violation

8   is "willful" if the creditor has knowledge of the stay. See Debtor's Motion, at p. 4, lines 21-22. And, as

9   the Debtor implicitly recognizes and attached Declaration of Michael J. Munoz makes clear, neither

10  Creditor nor Counsel became aware of the bankruptcy court action until February 2024—after they had

11  filed the state court action. Being unaware of the bankruptcy case *a fortiori* means they were unaware of

12  any stay associated with such case.  Even though Debtor is asking for damages, with respect to this

13  violation he may take none.

14      Debtor next argues that that "delay and intentional withholding of dismissal" in the state action

15  once Counsel learned of the bankruptcy case also "violated the stay". See Motion, p. 5, line 14. While

16  first he wrote about conduct which, though technically a violation, did not warrant damages, Debtor now

17  writes about conduct which is no violation at all. Debtor is ignoring both law and facts.

18      As to the law, although Debtor cites at length in his motion those §362 subsections dealing with

19  the imposition of the stay—(a)(1) and a(6)—and meting out compensation and/or punishment for its

20  violation—subsection (k)—he writes not a word about the *duration* of the stay. He simply proceeds from

21  the premise that the stay was in effect at the time of "delay and intentional withholding".

22      That premise is false. The stay imposed by subsections (a)(1) and (a)(6)—cited by Debtor—had

23  in fact ended before the "delay and withholding" by virtue of §362(c)—not at all cited by Debtor, but no

24  less the law. That section, quoted *supra*, causes the stay to end in a chapter 7 case when a discharge is

25  granted. 11 USCA §362 (c)(2)(c). And see, In re Franklin, 179 B.R. 913, 925 (Bankr. E.D. Cal. 1995)

26

-5-

1    ("[f]or actions that are directed against the debtor or property of the debtor, the stay expires at the

2    earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or

3    denied.").

4         As to the facts Debtor ignores, the Motion is devoid of any reference to the actual date when

5    Creditor and Counsel learned about the bankruptcy case. Debtor writes that "Debtor's counsel contacted

6    Munoz notifying him that the lawsuit violated the stay" (Motion, at p. 4, line 19-20) but is entirely mum

7    about *when* that contact occurred. Had the Debtor put in the date when that notification occurred—i.e.,

8    on or about February 20, 2024—it would have been apparent to the Court that the notification occurred

9    after the January 2, 2024 discharge. And since this is a chapter 7 case, and the state court action was one

10    against the person of the debtor, the discharge terminated such stay. Counsel's actions of supposed

11    "delay and intentional withholding" of dismissal could not violate any stay because, by February 2024,

12    there was no longer a stay to violate. Debtor is therefore not entitled to damages.

13

14    **2. When Debtor's attorney tells counsel that he advised debtor to allow himself to be dismissed**

15    **from the case instead of moving for contempt and grants Counsel additional time to talk to a**

16    **bankruptcy attorney, and as a result of and in reliance upon that statement Counsel does as the**

17    **Debtor asks, Debtor should be estopped from asserting his right for damages against**

18    **Respondents**

19         Equitable estoppel is defined as "as having the effect of absolutely precluding a party, both at law

20    and equity from asserting rights which might perhaps have otherwise existed, either of property, of

21    contract, or of remedy as against another person, who has in good faith relied upon such conduct, and

22    has been led thereby to change his position for the worse, and who on his part acquires some

23    corresponding right, either of property, of contract, or of remedy. United States v. Georgia-Pac. Co., 421

24    F.2d 92, 96 (9th Cir. 1970). It "prevents a party from assuming inconsistent positions to the detriment of

25    another party". *Id,* at p. 96.

26

1    Four elements must be present to establish the defense of estoppel: (1) The party to be estopped

2    must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party

3    asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true

4    facts; and (4) he must rely on the former's conduct to his injury. <u>United States v. Georgia-Pac. Co.</u>, 421

5    F.2d 92, 96 (9th Cir. 1970).

6    Mr. Heston writes in his declaration that "after several rounds of communication" he "was

7    forced to threaten to file an action for violation of the automatic stay before Munoz finally filed a request

8    for dismissal of Philip Moore" (Motion, at p. 11, lines 15-17). As the attached Declaration of Michael

9    Munoz reveals, the "several rounds of communication" consisted of one phone call and two emails. The

10   emails—one on the 22nd and another on the 26th—Counsel did not read until the 28th. On this same date,

11   February 28, Debtor's attorney also sent his threat. Its contemplated implementation is made equivocal

12   by the language that he "advised his client to take the simplest route and allow himself to be dismissed

13   from the lawsuit" and apparently conditional on a phone call from Counsel to Mr. Heston.

14   And it was after this threat that Counsel called Mr. Heston and asked him for time to consult

15   with a bankruptcy lawyer—which Mr. Heston granted. The sequence of some of these events appears

16   reversed in Mr. Heston's declaration, which reads "Munoz stated he would contact a bankruptcy attorney

17   to determine how to proceed" (Motion, p. 11, lines 9-10)" *before* "I was forced to threaten. . ." The

18   sequence is also incomplete, for Mr. Heston's leaves out his own statement to Counsel granting the

19   additional time to talk to a bankruptcy lawyer.

20   The Court should find Counsel's declaration that Mr. Heston said it would be fine for Counsel to

21   take time to discuss the matter with a bankruptcy attorney credible. First, because it is not contradicted

22   by Mr. Heston's declaration. Mr. Heston leaves out of his declaration what answer, if any, he gave to

23   Counsel's ask. Second, because from the circumstances of the interaction, it would be unlikely Mr.

24   Heston would have remained silent when Counsel asked for additional time to consult with the

25

26                                                                  -7-

1    bankruptcy lawyer. Mr. Heston likely answered that, in some way. He just does not tell the Court how.

2    Counsel does.

3         For collateral estoppel then, when Mr. Heston gave the okay to Counsel to consult with

4    bankruptcy attorney, even assuming for the sake of this argument that Debtor had the right to file for

5    contempt for violation of the stay (he did not), Mr. Heston represented to Counsel that such right would

6    be held in abeyance, for a time. The forbearance would be for the period during which Counsel sought

7    the advice of someone who knew bankruptcy law. Counsel had no reason to believe that Mr. Heston was

8    anything but truthful in the representation. Mr. Heston did not set a definitive time table for this. A

9    reasonable time was implied. Only Mr. Heston—and not Counsel—could know that Mr. Heston

10   intended to stand back upon this right at some later time, when it was convenient for him and his

11   client—like seven months later, when he brought his motion for violation of the stay.

12        Counsel relied on Mr. Heston's representation that some time would be granted before sanctions

13   were sought, because Counsel did take such time to research bankruptcy law and consult with a

14   bankruptcy lawyer. Counsel changed his position in reliance, because had Mr. Heston told Counsel that

15   he would later file for sanctions (additional time or not), Counsel would have filed for dismissal sooner

16   to avoid the potential sanctions.

17        And Counsel's justifiable—yet a bit naïve—reliance on Mr. Heston's ostensible accommodation

18   is now coming back to bite him, as Mr. Heston seeks sanctions over that same time period he extended

19   as a reprieve.

20        Under these circumstances, even if the stay were in place, Debtor should be estopped from

21   complaining the dismissal did not come sooner.

22

23   **3. Creditor was not required to dismiss his state court lawsuit to steer clear of 11 U.S.C § 362**

24   **sanctions and therefore may not be sanctioned for "withholding dismissal" as Petitioner is**

25   **requesting here**

26                                                        -8-

1    Debtor writes "this intentional act of withholding dismissal, despite knowing legal requirements

2    to cease all collection efforts, constitutes a willful violation of the stay."

3    A creditor may choose to stay or dismiss the state court litigation after it learns of the bankruptcy

4    filing. In re Parker, 576 B.R. 1, 9 (Bankr. N.D. Cal. 2017). He is not obligated to dismiss, on pain of § 362

5    sanctions, such that "withholding dismissal" would constitute a violation of the stay. Debtor, represented

6    by such able counsel, ought to know this.

7    Debtor's state case attorney filed a notice of stay in this case on March 7, 2024. Debtor leaves

8    this fact out of his motion. The notice came one week after February 28, when Counsel first laid eyes on

9    the discharge order—the first document he received substantiating the bankruptcy. A copy of the notice

10    of stay was served on Counsel, who read it and who understood the state case against Debtor was stayed.

11    He did not file or serve—or even informally suggest—that he was opposed to the stay in any way.

12    Because he was not.

13    If Counsel had filed the notice himself, his conduct would have been on par with that of the

14    creditor in In Re Parker, supra—and clearly not sanctionable. He would have chosen to stay, instead of

15    dismiss—a permissible course of action.

16    The question is whether the fact that someone other than Creditor filed for the stay should mean

17    that the Creditor is still obligated to file for a stay himself. The answer is no, because '[t]he law does not

18    require the doing of a futile act." Ohio v. Roberts, 448 U.S. 56, 74 (1980). Once the notice of stay was

19    filed—by anyone—the filing of an identical notice by this Creditor would have made no difference. The

20    case was stayed. The Creditor's copy-cat act would have been futile, and not legally required.

21    In the two-week interim between the filing of the notice of stay and that of dismissal, Counsel

22    did not conduct any settlement negotiations in the state law case against Debtor. He conducted no

23    discovery in the state law case against Debtor. He had no communications with Debtor's state law-

24    attorney, aside from acknowledging receipt of the notice of stay. In fact, the only communication with

25    either Debtor of any of his attorneys in this time frame occurred on March 12, 2024. Mr. Heston asked

26    -9-

about dismissal and Counsel replied that Debtor should have held off from filing the mechanic's lien while Counsel was attempting to obtain his client's assent to the dismissal.

Respondents wonder, what act or acts Debtor is really complaining about here, and how did it (or they) actually damage him? The "withholding of dismissal"? Creditor was not required to dismiss, when staying the action was sufficient. That Creditor did not file the notice of stay himself? A week after Counsel first reviewed the bankruptcy documents, it would have been futile to do so. Debtor's attorney had beat him to the punch. That on March 12, he wrote that Debtor should have held off on filing a lien while Counsel was asking his client for a dismissal? Perhaps this one sentence is what Debtor complains about as an "attempt to leverage" when he writes "Munoz attempted to leverage [. . .] dismissal as a bargaining chip during settlement negotiations."

Debtor should know, as his counsel surely does, that the above email between Mr. Heston and Counsel was in no way any kind of "settlement negotiation". First, Mr. Heston did not represent Debtor in the state case. He could not settle on his behalf. Then the language itself, while reprobative, is not in the broadest sense of the word either an "attempt to" or "leverage of" anything, much less a negotiation. It means what it says, Debtor should not have put a lien on the property while Counsel was angling for a dismissal. Since, other than acknowledging receipt of notice of stay, Counsel never even brought up the subject of bankruptcy in discussions with Debtor's state case attorney, Respondents surmise that this one passing reference to dismissal is what Debtor calls "gravity of actions, justifying punitive damages". He makes mountains of molehills.

He writes that he "suffered emotional distress due to the prolonged uncertainty and financial strain caused by the continued litigation". The litigation, at least the part of it relevant to the damages for the proclaimed violation of the stay, did not "continue" past March 7. And Respondents first chance to review any substantive proof that there even was a bankruptcy case did not come until February 28. We are talking about one week. It is doubtful, speculative, fanciful that that week resulted in prolonged uncertainty and financial strain.

-10-

**4.Because the penalty for a Chapter 7 Debtor who neither lists nor schedules the fraud or fiduciary debt is the forfeiture of the right to enjoy exclusive federal jurisdiction over such claim, Respondents did not violate the discharge injunction when they filed in state court**

Debtor writes that "Philip Moore received his discharge on January 2, 2024 and was protected by the discharge injunction from *any* further collection efforts" (Motion, p. 6, line 22-23, emphasis added)." Had he said "most" collection efforts, he would have been right. As he says it though, he is wrong.

For even the injunction, on its four corners, does not prohibit collection of *any* debt. Instead, it says that "no one may make any attempt to collect a *discharged* debt" (See Motion, Exhibit A, "Order of Discharge"). It does not therefore enjoin "any further collection efforts", as Debtor claims, only those collection efforts directed at discharged debts. Creditors for non-discharged debts may therefore try to collect dehors the injunction. The injunction further says that "some debts are not discharged" and then lists "some debts which the debtors did not properly list" under those "not discharged" debts. (Id.)

Respondents moved the state court to add claims against Debtor for common-law fraud under California law (Motion, exhibit D, at p5.) and breach of fiduciary duty (Id., at p. 5-6). Debtor says, in Point II of his Memorandum, that "respondents violated the discharge injunction" thereby. The pronouncement implies that the debts owed to Creditor for fraud and breach of fiduciary duty must have been among those discharged by the "Order of Discharge". The premise is a sine qua non of Debtor's argument, because again, the order does not forbid the collection of *all* debts, only "discharged" debts, and it expressly does <u>not</u> discharge "some debts which the debtors did not properly list" And the premise (of discharge) is implied in the argument, because nowhere within the body of the argument does Debtor even perfunctorily address the question of "were these unlisted debts to Creditor discharged, or not discharged by the order?".

-11-

1        The answer to that question requires a close reading of the interplay between Bankruptcy Code §

2  523 and the concurrent jurisdiction provisions of 28 U.S.C. § 1334. It is far from the *fait accompli* Debtor's

3  motion makes it to be.

4       In re Franklin, 179 B.R. 913 (Bankr. E.D. Cal. 1995) is principally on point, and entirely

5  instructive. In *Franklin*, the debtor (Franklin) filed a chapter 7, "no-asset"[1] case. He did not list Fidelity as

6  a creditor. Franklin obtained a discharge on September 28, 1993. On April 1, 1994 Fidelity sued Franklin

7  in state court, alleging *inter alia,* fraud. Franklin removed the action to federal court and defended on

8  grounds of discharge in bankruptcy. Once in federal court, Franklin sought to change venue to the

9  bankruptcy court where he had obtained his discharge. *See Franklin, supra,* at p. 917.

10       That court said "the facts related to the fraud count implicate the exception to discharge for

11  fraud debts that are omitted from the debtor's schedules. 11 U.S.C. § 523(a)(3)(B)." In re Franklin, 179

12  B.R. 913, 918 (Bankr. E.D. Cal. 1995). It then said that 28 U.S.C. § 1334.

13           "establishes the general proposition that state and federal courts have concurrent
subject matter jurisdiction over civil proceedings that arise under, arise in, or are related

14           to a bankruptcy case. In contrast, federal jurisdiction over the bankruptcy case itself
and over the property of the debtor and of the estate is exclusive.

15

16           Whatever else the phrase "arise under" may mean in federal jurisprudence, civil
proceedings that "arise under" the Bankruptcy Code within the meaning of 28 U.S.C.
§ 1334(b) include the causes of action for nondischargeability that are created by

17           Bankruptcy Code § 523." In re Franklin, 179 B.R. 913, 919–20 (Bankr. E.D. Cal. 1995).

18       To this "general proposition" of concurrent jurisdiction, the *Franklin* court said § 523 creates an

19  exception. That section, it said, "in some circumstances, reserves exclusive federal jurisdiction over four

20  of the sixteen categories of nondischargeability action, including fraud actions under section 523(a)(2). In

21  other words, there is an exclusive jurisdiction exception to the general rule of concurrent jurisdiction, and

22  there is a concurrent jurisdiction exception to that exclusive jurisdiction exception." In re Franklin, 179

23

---

24  [1] Rule 2002(e) provides:
In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the

25  notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if
sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.
Fed.R.Bankr.P. 2002(e).

1    B.R. 913, 920 (Bankr. E.D. Cal. 1995). As to the fraud claim, the court wrote "Fidelity's fraud claim

2    however, is nominally within the exclusive jurisdiction exception, and the question ultimately becomes

3    whether it is within the exception to the exception. See <u>Franklin</u>, *supra*, at 920, footnote omitted.

4        It then continued "[t]he question next becomes whether Fidelity's section 523(a)(2) fraud claim

5    falls within the concurrent jurisdiction exception to the section 523(c) exclusive jurisdiction exception to

6    the general rule of concurrent jurisdiction." <u>In re Franklin</u>, 179 B.R. 913, 923 (Bankr. E.D. Cal. 1995). It

7    answered in the affirmative. It said that the "critical element [of the 523(a)(3)(b) exception to the 523(c)

8    exclusive jurisdiction provision] is the timeliness requirement for requesting a determination of

9    dischargeability. The prescribed deadline for timely filing of such a request is sixty days after the first date

10   established for the first meeting of creditors (regardless of whether the meeting is actually held) and can

11   be extended only on motion filed *before* it expires." <u>In re Franklin</u>, 179 B.R. 913, 923 (Bankr. E.D. Cal.

12   1995) and citing *Manufacturers Hanover v. Dewalt (In re Dewalt),* 961 F.2d 848, 850–51 (9th Cir.1992) (seven-

13   day notice of deadline not time enough).

14       The *Franklin* court concluded:

15       [s]ince Franklin concedes that Fidelity was not listed in his bankruptcy schedules and did not
         otherwise know of the existence of his bankruptcy case before that [60-day] deadline passed,
16       the prerequisite to exclusive federal jurisdiction over Fidelity's nondischargeability action
         based on fraud has not been satisfied. Thus, Fidelity's nondischargeability action for fraud
17       lies under section 523(a)(3)(B) rather than section 523(a)(2). It qualifies for the exception to
         the exception and may be litigated in state court. <u>In re Franklin</u>, 179 B.R. 913, 924 (Bankr.
18       E.D. Cal. 1995).

19       There is a lot to unpack in section 523, and when the *Franklin* court refers to the section as

20   "opaque" (*Franklin*, supra, at 926) it is being generous to say the least. That court's analysis, however, is

21   as through an exegesis of the section as this writer has found. The *Franklin* analysis should be dispositive

22   here, for the following reasons.

23       *Franklin* was a no-asset case, as is this one. In *Franklin,* as in this case a creditor had been

24   unscheduled and unlisted. After *Franklin* obtained a discharge, like the Debtor here did, Fidelity brought

25   fraud claims in state court—as the Respondents did in this case. In *Franklin,* the filing of the lawsuit

26                                          -13-

occurred more than 60 days after the first date set for the meeting of creditors. It was at that time when

Fidelity first learned of the bankruptcy. Here, as in *Franklin,* Respondents first learned about the

bankruptcy on February 22, 2024—more than sixty days after the 10/26/2023 date set for the creditor

meeting (whether that was held or not). *Franklin* stands as a warning for Debtors such as this one who

omit fraud and fiduciary debts from their lists and schedules that "the penalty to the debtor for failing to

schedule a fraud debt or otherwise to inform the creditor of the bankruptcy [within the sixty-day time

limit] is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations

period applicable in the exclusive jurisdiction actions." In re Franklin, 179 B.R. 913, 924 (Bankr. E.D.

Cal. 1995)

And before Debtor grasps at the jurisdictional question ultimately decided in *Franklin* as enough

of a distinction between that case and this to render the former inapposite, Respondents point out

*Franklin* stands for the rule that a nondischargeability action for fraud which lies under section

523(a)(3)(b) rather than 523(a)(2) may be litigated in state court. See *Franklin,* at 924. This action for

fraud lies under 523(a)(3)(b) because it was "neither listed listed nor scheduled under section 521(a)(1) [. .

.] with the name [. . .] of the creditor to whom such debt is owed, in time to permit-- if such debt is of a

kind specified in paragraph (2) [money obtained by fraud], (4) [fraud or defalcation while acting as a

fiduciary], or (6) of this subsection, timely filing of a proof of claim and timely request for a

determination of dischargeability of such debt under one of such paragraphs, unless such creditor had

notice or actual knowledge of the case in time for such timely filing and request". See 11 U.S.C. §

523(a)(3)(B).

The Debtor's premise that the debt at issue here had been discharged by the order is not only

unstated (perhaps with good reason from his perspective), but also false. Sure, there might be some

begrudging recognition of that fact—or at least of the open question of whether this is a dischargeable

debt—in the passing observation from the Debtor's "Statement of Facts" that "seemingly this decision

(i.e., what and where to file) was based upon the belief that a cause of action similar to 11 U.S.C 523

-14-

1    (a)(4) would render the debt non-dischargeable, without regard for the fact that such a claim would need

2    to have been brought before the Bankruptcy Court pursuant to 523(c)(1)" (Motion, at p. 2, lines 23-26).

3    But the subordinate clause of that observation is, itself, false.

4          As the *Franklin* decision painstakingly, but clearly explains, not all 523(a)(4) claims fall within the

5    exclusive jurisdiction exception to the concurrent jurisdiction provision of 28 U.S.C. § 1334. Some

6    523(a)(2) (or (a)(4), for that matter) claims fall within the exception to the exception. That is, they

7    backslide into the concurrent jurisdiction provision. An (a)(2) or (a)(4) cause of action for a debt which is

8    unscheduled, unlisted, and not brought to the Creditor's attention within the 60-day period is

9    "transmuted" into a 523(a)(3)(b) cause of action. An individual debtor is not discharged of such debt

10   under Chapter 7, and the holder of such debt may bring his action in state court.  See also, <u>Johnson v. JP</u>

11   <u>Morgan Chase Bank</u>, 395 B.R. 442, 447 (E.D. Cal. 2008) (the penalty for the debtor who fails to schedule

12   a fraud debt or otherwise inform the creditor of the bankruptcy is forfeiture of his right to have

13   dischargeability determined exclusively by the bankruptcy court, citing *Franklin, supra*)

14         That is exactly what Respondents did here. Deciding where and how to proceed against the

15   defrauding Debtor required Counsel to engage in a first-time foray into the intricacies of bankruptcy law.

16   However thorough or perfunctory the endeavor, still the reality is unescapable, that unlike the attorney

17   for Debtor, Counsel is—and certainly was, when the events relevant to Debtor's motion unfolded--no

18   "specialist" in this area of the law. He was the neophyte here. But by dint of fortune or design, he steered

19   the lawful course.

20

21                                    **<u>CONCLUSION</u>**

22        Debtor is not entitled to damages for willfully violating the stay because the stay had expired

23   when Respondents first learned of the bankruptcy case. Debtor is estopped from claiming damages for

24   Creditor's alleged violation of the stay through inaction because Debtor expressly acquiesced to the

25   inaction and Creditor relied on those expressions to his detriment. After the filing of a notice of stay,

26                                       -15-

1  Creditor was not required to dismiss his state court lawsuit, so a delay of dismissal does not constitute a

2  violation of the stay. Respondents did not violate the discharge injunction by pursuing state law causes of

3  action for fraud and breach of fiduciary duty because debts incurred through fraud and breach of

4  fiduciary duty were not discharged by the injunction and the state court had jurisdiction to determine the

5  dischargeability question.

6

7  Dated: 1/5/2025                                                      By:

8                                                                              CIPRIAN TURCU

9                                                                              Attorney for Respondents

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                                  -16-

1

## DECLARATION OF MICHAEL J. MUNOZ

2  I, Michael Jason Munoz, declare that I have personal knowledge of the following matters, except as to

3  those stated on information and belief, and as to those I believe them to be true. If called to testify, I

4  would and could competently testify to the following:

5  1. From approximately September 2023 until November 1, 2024, I represented Fausto Atillano's in

6  California Superior Court Case No. CVRI 2306600 As of, Mr. Atillano obtained new counsel and I am

7  no longer his attorney in that case.

8  2. The Defendants in the above case were Philip Moore in his personal capacity and Ocean Contracting

9  Corp, a California Corporation. I am informed and believe that at the time I filed the above lawsuit,

10  Philip Moore was the Chief Executive Officer, Secretary, and one of the two Directors of the corporate

11  defendant.

12  2. When I filed the complaint in the above case, I did not know that Philip Moore had filed for

13  bankruptcy.

14  2. On 1/11/2024 I got an email from Kiki Engel, who said she was hired to represent Philip Moore and

15  Ocean Contracting. She asked for additional time to file an answer in the lawsuit, which I gave. She did

16  not tell me about the bankruptcy.

17  4. On or about February 20, 2024 I received a phone call from Benjamin Heston, who represented to me

18  that he was an attorney for Philip Moore, who had filed for bankruptcy. Mr. Heston asked that I dismiss

19  Moore from the lawsuit. I had never heard of Mr. Heston prior to that phone call. I did not know—

20  before the call—that Moore had filed for bankruptcy. At the time of the call, I did not have any other

21  information, besides Mr. Heston's statement, to confirm what Mr. Heston was telling me.

22  5. I asked Mr. Heston to send me paperwork confirming the bankruptcy filing.

23  6. On February 22, I am informed and believe Mr. Heston emailed me a copy of the discharge order. I

24  went out on a six-day family trip that evening. I checked my emails on my mobile phone the next day

25

26  -17-

and saw that Mr. Heston had sent me an attached document. I did not download the document or read it that day. I replied "thank you" to Mr. Heston.

7. On February 26, Mr. Heston emailed me asking when I would dismiss Moore from the lawsuit. I did not read this email until February 28 when I returned to work. On February 28 I read the discharge order Mr. Heston emailed me 6 days earlier.

8. I had no other communication with Mr. Heston between February 20 and February 28. I had no communication with Moore's counsel for the state law case during that same time period. I conducted no settlement discussions or negotiations for the state law case during this time.

9. On February 28, 2024 Mr. Heston emailed me, stating that his client wanted to move for contempt of court over the state law case against him. Mr. Heston wrote that he had advised his client to just allow me to dismiss him and asked that I call him.

10. I then called Mr. Heston and asked him to allow me some time to review the discharge order and the bankruptcy case, and to consult with a bankruptcy specialist before he filed his contempt action. He said that would be fine. I also asked him to send me a list of the creditors Moore had included in his bankruptcy filing. He emailed me a list that same day.

11. I read the list. Fausto Atillano, the Plaintiff in the state court case, was not on it. I thought I should do more research into bankruptcy law before dismissing the case.

12. On that same day, February 28, 2024 I spoke with a bankruptcy attorney. I sent him the creditor list and asked what effect Fausto Atillano's omission from the creditor list might have on the debt Moore owed to Atillano. The attorney answered that Ocean Corp. (the other defendant in the state law case) was included. This was not responsive to my question and gave me no guidance about what I should do with the state law claim. I resolved to call him again.

13. On 3/7/2024 Moore filed, or caused to be filed, a notice-of-stay in the state law case declaring that that case was stayed by reason of the bankruptcy filing. I did not oppose the stay and did not file any

-18-

document in response to the notice. I believed the state law action was stayed as of that date. I did not take any further action to prosecute the state law case against Moore before I filed for dismissal.

13. Sometime between 3/7/2024 and 3/12/2024, I found out that Philip Moore had placed a mechanic's lien on some of my client's property.

14. On 3/12/2024 Mr. Heston emailed me asking when I would be filing for a dismissal. I answered that I would talk to a "civil" attorney and that I would let him (meaning, Mr. Heston) know. I made a mistake when I wrote "civil". I meant to say "bankruptcy" instead. I also told Mr. Heston that Moore should not have put a lien on my client's property when I was trying to talk him into dismissing the lawsuit. This was the last communication I had with Mr. Heston before I filed for dismissal of the state law case against Moore.

15. Had I known that Mr. Heston intended to seek sanctions because I did not move fast enough, to his and his client's liking, after the 2/28 conversation, I would have moved to dismiss the case no later than 3/8/2024, after I received the notice of stay.

16. Instead, over the next several days, I researched bankruptcy law on my own and decided that, even though the debt to Atillano had not been listed, it was probably discharged by the bankruptcy order.

17. On 3/23/2024 I completed and sent a notice of dismissal form to Moore's counsel in the state case. She filled out her part of the form and filed it with the state court a few days after.


I declare under the penalty of perjury under the laws of the State of California that the foregoing are true and correct.


Executed on ___01/05/25___          By:_____

                                    DECLARANT


-19-

# Exhibit 1: Email from Kiki Engel



Michael Munoz <mmunoz@munozlawyers.com>

## Fausto Atilano v. Ocean Contracting Corp., et al./RSC Case No. CVRI2306600

**Kiki Manti Engel** <kengel@rhlaw.com>                                    Thu, Jan 11, 2024 at 1:44 PM
To: "mmunoz@munozlawyers.com" <mmunoz@munozlawyers.com>
Cc: "Christopher G. Jensen" <cjensen@rhlaw.com>, "Amanda K. Perez" <aperez@rhlaw.com>, "Ciji M. Gomez"
<cgomez@rhlaw.com>

Mr. Munoz,

Our office was retained to represent Defendants Ocean Contracting Corp. and Philip Moore in the above-referenced
matter initiated by your client, Fausto Atilano. We are requesting an extension to file a responsive pleading on behalf of
both Defendant Ocean Contracting Corp., and Defendant Philip Moore by February 12, 2024. Please let us know if you
are agreeable to the extension requested.

Thank you for your anticipated professional courtesy and cooperation.

Sincerely,

Kiki Manti Engel, Esq.

Shareholder and Senior Attorney

Reid & Hellyer, APC

38975 Sky Canyon Drive, Suite 203

Murrieta, CA 92563

P: (951) 695-8700

F: (951) 848-9759



This message is intended only for the use of the individual or entity to which it is addressed, and may contain information
that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify the sender immediately.  Thank you.

# Exhibit 2: Email from B. Heston re: contempt and phone call



Michael Munoz <mmunoz@munozlawyers.com>

---

## Phil Moore Bankruptcy

**Ben Heston** <ben@nexusbk.com>                                    Wed, Feb 28, 2024 at 9:35 AM
To: Michael Munoz <mmunoz@munozlawyers.com>

I just spoke with someone from your office who said you're out until this afternoon. Give me a call when you get a chance.

My client is understandably upset regarding the voluminous discovery requests that he received and he wants to move forward in bankruptcy court to have your client held in contempt for violation of the bankruptcy stay that went into place on September 20th and is still in place. Since the stay was in place when the state court action was filed and actions taken in violation of the stay are void, Phil has not actually been sued unless the bankruptcy court retroactively annuls the stay to validate him being served. See In re Schwartz, 954 F.2d 569 (9th Cir. 1992); Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726 (B.A.P. 9th Cir. 2013). Additionally, unless prompt action is taken, the violation of the stay which had previously been unintentional would become willful and therefore trigger 11 U.S.C. 362(k) which provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

Although my client is fired up about this, I am strongly urging him to take the simplest route which is to just allow himself to be dismissed from the lawsuit, and then focus his efforts on the corporation's defense.

I'll be free anytime today.

[Quoted text hidden]

# Exhibit 3: Notice of Stay

CM-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kiki Manti Engel/Amanda K. Perez          SBN: 309136/342923<br>REID & HELLYER APC<br>3685 Main Street, Suite 300, RIVERSIDE, CA 92501<br>TELEPHONE NO.: (951) 682-1771     FAX NO. *(Optional)*: (951) 686-2415<br>E-MAIL ADDRESS *(Optional)*: kengel@rhlaw.com/aperez@rhlaw.com<br>ATTORNEY FOR *(Name)*: Ocean Contracting Corp. and Phillip Moore | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
STREET ADDRESS: 4050 Main Street
MAILING ADDRESS: 4050 Main Street
CITY AND ZIP CODE: Riverside, 92501
BRANCH NAME: Riverside Historic Courthouse

PLAINTIFF/PETITIONER: Fausto Atilano

DEFENDANT/RESPONDENT: Ocean Contracting Corp., a California corporation,
Phillip Moore, et al.

| **NOTICE OF STAY OF PROCEEDINGS** | CASE NUMBER:<br>CVRI2306600 |
|---|---|
| | JUDGE: Irma Asberry |
| | DEPT.: 5 |

**To the court and to all parties:**

1.  Declarant *(name)*: Kiki Manti Engel, Esq.

    a. [X] is [ ] the party [X] the attorney for the party who requested or caused the stay.

    b. [ ] is [ ] the plaintiff or petitioner [ ] the attorney for the plaintiff or petitioner. The party who requested the stay has not appeared in this case or is not subject to the jurisdiction of this court.

2.  This case is stayed as follows:

    a. [ ] With regard to all parties.

    b. [X] With regard to the following parties *(specify by name and party designation)*: Defendant Phillip Moore

3.  Reason for the stay:

    a. [X] Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number, debtor, and petitioners.)*

    b. [ ] Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

    c. [ ] Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing arbitration.)*

    d. [ ] Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the client's request for arbitration showing filing and service.)*

    e. [ ] Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 7, 2026

Kiki Manti Engel, Esq.
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ *K.k. Manti*
_____
(SIGNATURE)

Page 1 of 1

**NOTICE OF STAY OF PROCEEDINGS**
Cal. Rules of Court, rule 3.650
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder

# Exhibit 4: March 12 email exchange



Michael Munoz <mmunoz@munozlawyers.com>

## Phil Moore Bankruptcy

**Michael Munoz** <mmunoz@munozlawyers.com>                         Tue, Mar 12, 2024 at 2:35 PM
To: ben@nexusbk.com

I need to talk to his civil attorney first, I haven't had a chance. I will try to do this week. On another note, Phil filed a mechanics lien on my clients property recently which got him agitated again. He should of hold off on doing that when I'm trying to get him to agree to dismiss the lawsuit against Phil.   I will let you know once I talk to his civil attorney,




[Quoted text hidden]

Case Name: *In re: Philip Moore and Bonnie Moore*
Case No.: *6:23-bk-14289-WJ*

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 232 East Foothill Blvd. Suite 201, Azusa, CA 91702.

    On January 7th 2025, I served the foregoing document(s) described as:

**Opposition to Debtor's motion for damages and issuance of an order to show cause RE: contempt of discharge injection; memorandum of points and authorities; declaration of Michael J. Munoz**

On the interested parties by causing all of the pages of the above entitled documents to be sent to the recipients noted via email at the respective email addresses and placing a true copy thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]     **BY MAIL:** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice, I deposited such envelop in the mail at AZUSA, CA.

[ ]     **BY FACSIMILE:** I caused all of the paged of the above-entitled document to be sent to the recipient(s) noted via email at the respective email address(es) indicated above.

[X]     **BY E-MAIL:** I caused all of the pages of the above-entitled document to be sent to the recipient(s) noted via email at the respective email address(es) indicated above.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on **January 7th 2025,** at Azusa, California

_____
Ciprian Turcu, Esq.

1

2

<u>**SERVICE LIST**</u>

3

Benjamin Heston
4  3090 Bristol Street #400
Costa Mesa CA 92626
5  Email: ben@nexusbk.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28